UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

PATRICK LEVIER                          CIVIL ACTION NO. 6:14-CV-00445
                                        SECTION P

VERSUS                                  JUDGE HAIK

BURL CAIN, WARDEN                       MAGISTRATE JUDGE HANNA

## <u>REPORT  AND  RECOMMENDATION</u>

Patrick Levier is an inmate in the custody of Louisiana's Department of Public

Safety and Corrections.  He is incarcerated at the Louisiana State Penitentiary at

Angola, Louisiana, serving a life sentence imposed following his 2007 conviction in

the 15th Judicial District Court, Lafayette Parish, Louisiana, on the charge of second-

degree murder.  He filed the instant petition for writ of *habeas corpus* on February

24, 2014, pursuant to 28 U.S.C. § 2254, seeking reversal of his conviction and

vacation of his sentence.

This matter was referred to the undersigned for report and recommendation in

accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this

Court.  For the following reasons, it is recommended that the petition be DISMISSED

WITH PREJUDICE.

<u>**BACKGROUND FACTS**</u>

On the evening of June 18, 2006, Patrick Levier shot and killed Nelson Lewis. Mr. Levier and Mr. Lewis were friends; they had worked together, and they had visited in each other's homes.  In June 2004, when they were coworkers, they were involved in a confrontation that resulted in Mr. Lewis pulling a knife out of his pocket and threatening Mr. Levier.  On a separate occasion, Mr. Levier observed Mr. Lewis pull out his knife and threaten another man.

Approximately three months before the shooting, Mr. Lewis began contacting Mr. Levier's girlfriend, Brenda Thibodeaux, by telephone.  During the telephone calls, Mr. Lewis accused Mr. Levier of cheating with other women, and he made advances toward Ms. Thibodeaux, including inviting her to go to the casino with him and offering to give her money.  Both Ms. Thibodeaux and Mr. Levier asked Mr. Lewis to stop calling Ms. Thibodeaux, and Mr. Levier twice complained to the police about Mr. Lewis.

On the morning of June 18, 2006, Mr. Levier and Ms. Thibodeaux had an argument.  During the argument, Ms. Thibodeaux told Mr. Levier that Mr. Lewis had offered to take her to the casino and to give her $300 to $400.

At approximately 6:30 that evening, Mr. Levier was driving his truck in Lafayette, Louisiana when he encountered Mr. Lewis, who was driving his car and

-2-

had a passenger, Herbert Cross, with him.  Either Mr. Lewis flagged down Mr. Levier or Mr. Levier flagged down Mr. Lewis, and they parked their vehicles in a parking lot at the corner of Simcoe Street and Louisiana Avenue.  Mr. Levier took his .22 caliber pistol from the truck's console and put it in his pocket.  The two men exited their vehicles and had a short conversation.  According to Mr. Levier, Mr. Lewis then put his hand in his pocket, which Mr. Levier interpreted as Mr. Lewis's reaching for a knife.  Allegedly fearing for his life, Mr. Levier fired four shots, each of which hit Mr. Lewis.  One of the shots hit Mr. Lewis in the back.  Mr. Lewis died as a result of his injuries.

Mr. Levier left the scene of the incident.  After informing his girlfriend, his mother, two friends, and a neighbor about what had happened, he turned himself in to the Lafayette Police Department.  He was arrested and detained.

## PROCEDURAL HISTORY

On June 18, 2006, a few hours after the shooting, Mr. Levier was arrested and taken into custody.  On August 17, 2006, he was indicted and charged with second-degree murder in the death of Mr. Lewis in violation of La. R.S. 14:30.  (Rec. Doc. 18 at 32).  On September 19, 2006, Mr. Levier, who was represented by counsel, waived formal arraignment and entered a plea of not guilty.  (Rec. Doc. 18 at 15).  On November 28 and 29, 2007, Mr. Levier was tried before a twelve-person jury.  After

deliberation, the jury found Mr. Levier guilty as charged.  (Rec. Doc. 18 at 179.) Although the verdict was not unanimous, ten out of twelve jurors voted to find Mr. Levier guilty on the second-degree murder charge.  (Rec. Doc. 20 at 190).

On December 4, 2007, Mr. Levier filed a motion for post-verdict judgment of acquittal or for modification of the verdict on December 4, 2007 (Rec. Doc. 18 at 180), which was denied by the trial court following a hearing held on December 10, 2007.  (Rec. Doc. 20 at 199).

On January 28, 2008, Mr. Levier was sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence.  (Rec. Doc. 18 at 227).  At the same hearing, the judge also granted oral motions for pauper status and for appeal.  (Rec. Doc. 18 at 227).

Mr. Levier then appealed, contending that "the State presented insufficient evidence to convict him of second-degree murder."[1]  Louisiana's Third Circuit Court of Appeal found that the state presented sufficient evidence to disprove Mr. Levier's claim of self-defense and affirmed both his conviction and his sentence.[2]  The Louisiana Supreme Court denied Mr. Levier's subsequent writ application.[3]

---

[1]    *State v. Levier*, 09-238 (La. App 3 Cir. 11/04/09), 21 So.3d 1139, 1140.

[2]    *State v. Levier*, 21 So.3d at 1148.

[3]    *State v. Levier*, 2009-KO-2664 (La. 06/04/10), 38 So.3d 298.

Mr. Levier then filed a motion for postconviction relief in the 15th Judicial District Court, raising three issues:  the effect of his mental impairment on his culpability and competency to stand trial, the effect of a victim impact statement on his sentence, and the ineffectiveness of his trial counsel.  (Rec. Doc. 27-1 at 130). The motion was opposed by the state.  (Rec. Doc. 27-1 at 118).  The trial court started an evidentiary hearing on these issues on April 11, 2011, and concluded the hearing on November 7, 2011.  (Rec. Doc. 28-1 at 193; Rec. Doc. 28-1 at 235).  In a minute entry dated November 10, 2011, the trial court denied the motion.  (Rec. Doc. 28-1 at 172).  Mr. Levier applied for supervisory writs to the Third Circuit Court of Appeal.  (Rec. Doc. 26-2 at 2).  On May 10, 2013, in Docket No. KH12-00456, the Third Circuit denied the writ application, stating:  "There is no error in the trial court's ruling denying Relator's application for post-conviction relief."  (Rec. Doc. 28-1 at 266).  Mr. Levier then filed an application for writs of certiorari and review with the Louisiana Supreme Court.  (Rec. Doc. 26-8 at 1).  On November 15, 2013, the Supreme Court, in Docket No. 2013-KH-1331, issued a one-word denial of his writ application.  (Rec. Doc. 28-1 at 269; *State ex rel. Levier v. State*, 2013-KH-1331 (La. 11/15/13), 125 So.3d 1104.  The instant petition was filed on February 24, 2014. (Rec. Doc. 1).

## ANALYSIS

Mr. Levier now seeks to have his conviction overturned, contending (a) that his mental impairments rendered him incapable of culpability at the time of the offense and incompetent at the time of trial, (b) that victim impact evidence was improperly admitted at sentencing and went beyond the permissible scope of such evidence, and (c) that his trial counsel provided ineffective assistance.  These are the same issues that were raised unsuccessfully in his motion for postconviction relief.

## A.   TIMELINESS AND EXHAUSTION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), applies to Mr. Levier's petition.  The threshold questions in *habeas* review under the AEDPA are whether the petition was timely filed and whether the claims raised were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in procedural default on a claim.[4]  In this case, the state concedes that Mr. Levier's petition is timely and that he has exhausted his state-court remedies with regard to the claims asserted in the instant petition.  The state does not allege that Mr. Levier's claims are procedurally defaulted.  Therefore,

---

[4]      *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997); 28 U.S.C. §§ 2254(b) and 2254(c).

without addressing whether the claims actually were exhausted or procedurally defaulted, the undersigned will review all of Mr. Levier's claims on the merits.

## B.   THE STANDARDS OF MERITS REVIEW.

A state prisoner seeking federal court review of his conviction pursuant to Section 2254 must assert a violation of a federal constitutional right.[5]  The AEDPA provides standards of review to be used in evaluating such claims.  A state court's factual findings are presumed to be correct,[6] and a reviewing court must give deference to state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.[7]  The statute codifies both the presumption of correctness that attaches to state court findings of fact and the clear and convincing evidence burden placed on a petitioner who attempts to overcome that presumption.[8]

A state court's determination of questions of law and mixed questions of law and fact must be given deference unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the

---

[5]     28 U.S.C. § 2254(a); *Lawrence v. Lensing*, 42 F.3d 255, 258 (5th Cir.1994); *Gray v. Lynn*, 6 F.3d 265, 268 (5th Cir. 1993); *Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993).

[6]     28 U.S.C. § 2254(e)(1).

[7]     28 U.S.C. § 2254(d)(2).

[8]     28 U.S.C. § 2254(e)(1).

United States Supreme Court.[9]   A state court's decision is contrary to clearly established federal law if:  (1) the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.[10]   A state-court decision unreasonably applies federal law if it either:  (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable.[11]   An unreasonable application of federal law is different from an incorrect application of federal law.  The court need not determine whether the state court's reasoning is sound; rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."[12]   The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.[13]

---

[9]      28 U.S.C. § 2254(d)(1); *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001).

[10]      *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010); *Hill v. Johnson*, 210 F.3d at 485.

[11]      *Penry v. Johnson*, 532 U.S. at 792; *Woodfox v. Cain*, 609 F.3d at 789.

[12]      *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).

[13]      *Price v. Vincent*, 538 U.S. 634, 641 (2003).

Mr. Levier seeks relief from a decision of the Louisiana Supreme Court, which is a one-word denial of a writ application.  The prior decision was the Third Circuit's one-sentence decision finding no error in the trial court's ruling.  The decision before that was the trial court's minute entry of November 10, 2011, which was a ruling on the merits.  When a reviewing federal court is "faced with a silent or ambiguous state habeas decision, the federal court should 'look through' to the last clear state decision on the matter."[14]   Similarly, "[w]hen one reasoned state court decision rejects a federal claim, subsequent unexplained orders upholding that judgment or rejecting the same claim are considered to rest on the same ground as did the reasoned state judgment."[15]  It must, therefore, be presumed that the Third Circuit's decision and the Supreme Court's decision adopted the trial court's reasoning.  Taken together, these three decisions of the state courts constitute a ruling on the merits of the claims raised in Mr. Levier's application for postconviction relief and again asserted in the instant petition.

As noted previously, the undersigned will not address whether Mr. Levier's claims are procedurally defaulted, since the State did not raise that issue, and will solely review the merits of his claims.

---

[14]     *Jackson v. Johnson*, 194 F.3d 641, 651 (5th Cir. 1999).

[15]     *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999).

**B.**   **C**LAIM **N**O**. 1.  C**ULPABILITY AND **C**OMPETENCY TO **S**TAND **T**RIAL**.**

Mr. Levier's first contention is that his substantive due process rights were violated because his mental retardation or other mental impairments rendered him incapable of acting culpably at the time of the offense and rendered him incompetent to stand trial.  The trial court concluded that both of these arguments lack merit.

The trial court based its conclusion regarding Mr. Levier's culpability on Louisiana law.  Under Louisiana law, mental defects or disorders short of insanity do not negate specific intent or reduce the degree of the crime.[16]  But Mr. Levier pleaded only not guilty; he did not plead not guilty by reason of insanity.  Therefore, the trial court found no basis on which to conclude that he was not culpable for the crime with which he was charged.  Because there was no not guilty by reason of insanity plea, the trial court found that Mr. Levier was precluded from presenting any evidence concerning whatever mental defects or disorders that he might have.

Although Mr. Levier now alleges that this resulted in a violation of the substantive due process rights guaranteed by the United States Constitution, his argument actually calls into question the state courts' interpretation of Louisiana law.

---

[16]    *State v. Leatherwood*, 411 So.2d 29 (La. 1982); *State v. Gachot*, 609 So. 2d 269, 278 (La. App. 3 Cir. 1992), *writ denied*, 617 So. 2d 1180 (La. 1993).

But "[f]ederal courts will not review a state court's interpretation of its own law in a federal habeas corpus proceeding."[17]  Instead, "state courts are the final arbiters of state law."[18]  In fact, "[a] federal court lacks authority to rule that a state court incorrectly interpreted its own law.  When. . . a state court's legal conclusions are affirmed by the highest court in that state, those conclusions *are* state law."[19]

In this case, the trial court found that Mr. Levier's failure to plead not guilty by reason of insanity precluded consideration of the effect that his alleged mental retardation or other mental impairments might have had on his culpability.  The Third Circuit expressly found no error in that ruling, and the state Supreme Court declined review.  Therefore, because this claim rests on the proper interpretation and application of state law, this claim falls outside the scope of federal *habeas corpus* review.  The undersigned finds that this claim lacks merit.

On the other hand, Mr. Levier's contention that his mental impairments rendered him incompetent to stand trial does raise a Constitutional issue.  The

---

[17]     *Cook v. Morrill*, 783 F.2d 593, 596 (5th Cir. 1986).  See also *Johnson v. Cain*, 215 F.3d 489, 494 (5th Cir. 2000) (referring to this "long-standing principle"); *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991) ("We will not review a state court's interpretation of its own law in a federal habeas corpus proceeding").

[18]     *Levy Gardens Partners 2007, L.P. v. Commonwealth Land and Title Insurance Co.*, 706 F.3d 622, 629 (5th Cir. 2013).

[19]     *Charles v. Thaler*, 629 F.3d 494, 500–01 (5th Cir. 2011) (emphasis in original).

conviction of a mentally incompetent defendant violates the Due Process Clause of the United States Constitution.[20]  Therefore, a criminal defendant may not be tried unless he is competent.  Indeed, "an erroneous determination of competence threatens a fundamental component of our criminal justice system – the basic fairness of the trial itself."[21]  Under the test devised by the United States Supreme Court, a criminal defendant is considered legally competent when he has the "present ability to consult with his lawyer with a reasonable degree of rational understanding" and "has a rational as well as factual understanding of the proceedings against him."[22]  Additionally, a defendant must be able "to assist in preparing his defense."[23]  However, a state may, as a matter of law, presume that a criminal defendant is competent to proceed and require the defendant to bear the burden of proving his incompetence,[24] and Louisiana does just that.[25]

---

[20]     *Pate v. Robinson*, 383 U.S. 375, 378 (1966); *Deville v. Whitley*, 21 F.3d 654, 656 (5th Cir. 1994).

[21]     *Cooper v. Oklahoma*, 517 U.S. 348, 364 (1996) (internal quotation marks omitted; citation omitted).

[22]     *Dusky v. United States*, 362 U.S. 402, 402 (1960); *Dunn v. Johnson*, 162 F.3d 302, 305 (5th Cir.1998).

[23]     *Drope v. Missouri*, 420 U.S. 162, 171 (1975).

[24]     *Medina v. California*, 505 U.S. 437, 452-53 (1992); *Meredith v. Cain*, No. 04-2126, 2005 WL 1400453, at *7 (E.D. La. June 2, 2005).

[25]     *Morgan v. Cain*, No. 05-6479, 2007 WL 3025056, at *5 (E.D. La. Oct. 15, 2007), citing *State v. Hernandez*, 98-KA-448 (La. App. 5 Cir. 05/19/99),735 So.2d 888, 893, *writ denied*,

When a state prisoner seeking postconviction relief asserts that he was not mentally competent to stand trial, and there was no resolution of that precise issue before he was tried, convicted, and sentenced, the Fourteenth Amendment to the United States Constitution requires that his conviction and sentence be set aside unless, after adequate hearing, it is shown that he was mentally competent to stand trial.[26]  The petitioner must present facts sufficient to positively, unequivocally, and clearly generate a real, substantial, and legitimate doubt as to his mental capacity to meaningfully participate in the proceedings and cooperate with his counsel.[27]  That burden is extremely heavy.[28]

In this case, the proper procedure was followed.  Mr. Levier did not offer an insanity defense at trial, and at no point before or during trial did he or his defense counsel ever argue that he was incompetent to stand trial.  After trial, Mr. Levier raised this issue, arguing that his mental retardation in particular and other unspecified mental impairments in general made him incompetent.  He was afforded

---

99-KO-1688 (La. 11/12/99); *State v. Lott*, 27849-KA (La.App. 2 Cir. 04/03/96), 671 So.2d 1182, 1186.

[26]     *United States v. Williams*, 819 F.2d 605, 609 (5th Cir. 1987); *Lee v. Alabama*, 386 F.2d 97, 105 (5th Cir. 1967) (*en banc*).

[27]     *Dunn v. Johnson*, 162 F.3d at 306, quoting *Washington v. Johnson*, 90 F.3d 945, 950 (5th Cir.1996); *Bruce v. Estelle*, 483 F.2d 1031, 1043 (5th Cir. 1973).

[28]     *United States v. Williams*, 819 at 609; *Johnson v. Estelle*, 704 F.2d 232, 238 (5th Cir. 1983).

an evidentiary hearing.  While mental retardation may render an individual incompetent to stand trial,[29] mentally retarded persons frequently know the difference between right and wrong and are competent to stand trial.[30]  In fact, the trial court noted in its ruling that the psychologist who testified at the competency hearing stated that, although Mr. Levier's IQ was in the range of moderate mental retardation, she would not be surprised if the jurors and his counsel did not think that he was mentally retarded.  It was only after the trial court took extensive evidence concerning Mr. Levier's competency that the court concluded that Mr. Levier was competent to stand trial.

Fifth Circuit precedent is conflicting as to whether competency to stand trial is a question of fact or a mixed question of law and fact, but the United States Supreme Court has treated competency to stand trial as a question of fact.[31]  Applying either potentially applicable standard and based on a review of the record, the undersigned concludes that the state courts' adjudication of this claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly

---

[29]     *United States v. Forrest*, No. 07-CR-60054, 2010 WL 4626089, at *9 (W.D. La. Oct. 7, 2010), citing ABA Criminal Justice Mental Health Standards, Section 7.4(b).

[30]     *Atkins v. Virginia*, 536 U.S. 304, 318 (2002).

[31]     *Patterson v. Cockrell*, 69 Fed. App'x 658, at *4 (5th Cir. 2003), citing *Maggio v. Fulford*, 462 U.S. 111, 117 (1983).

established federal law, and did not result in a decision that was based on an unreasonable determination of the facts.  Therefore, this claim lacks merit.

## C.  CLAIM NO. 2.  ADMISSION OF VICTIM IMPACT EVIDENCE AT SENTENCING.

Mr. Levier's second contention is that his right to due process under the Fourteenth Amendment to the United States Constitution was violated when the state failed to give him advance notice of its intent to present a victim impact statement at sentencing.  He argues, first, that he was denied the right to prepare a response to the statement and, second, that the statement exceeded the permissible scope of such evidence.  Again, this is actually a complaint about the interpretation of Louisiana law by the trial court, which cannot be reviewed by this *habeas* court.

More importantly, however, there was only one sentence that could be imposed.  Mr. Levier was charged with and convicted of second-degree murder.  In the Louisiana statute describing that crime, the penalty is also set forth.  The statute reads as follows:  "Whoever commits the crime of second-degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence."[32]  The trial court judge could impose only that one sentence.  Therefore, the victim impact statement that was read aloud at the sentencing hearing could not have any influence on the sentence actually imposed.  Accordingly, the

---

[32]    La. R.S. 14:30.1(B).

undersigned concludes that the state courts' adjudication of this claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, and did not result in a decision that was based on an unreasonable determination of the facts.  Therefore, this claim lacks merit.

**C.    CLAIM NO. 3  INEFFECTIVE ASSISTANCE OF COUNSEL.**

Mr. Levier's final claim is that his trial counsel provided ineffective assistance in four ways..  First, Mr. Levier claims that because his counsel was ineffective because he was interested in and pursued a conflicting political career during the litigation of Mr. Levier's case.  Second, Mr. Levier claims that his counsel his counsel was ineffective because he "failed to investigate, obtain, prepare[,] and present Petitioner's medical records; failed to put the court on notice of a defense based upon mental defect; and failed to enter a timely change of plea to the dual plea of 'not guilty and not guilty by reason of insanity."[33]  Third, Mr. Levier argues that his trial counsel was ineffective because he failed to object to the victim impact statement that was admitted at sentencing.  Fourth, Mr. Levier argues that his trial counsel was ineffective because he failed to pursue a manslaughter defense.[34]

---

[33]      Rec. Doc. 1-1 at 34.

[34]      Rec. Doc. 1-1 at 34.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the "right to effective assistance of counsel at every critical stage of the proceedings against them."[35]  When a defendant collaterally attacks his conviction or sentence based on the effectiveness of counsel, he has the burden of proving by a preponderance of the evidence that his constitutional rights were violated.[36] The right to effective counsel "is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense."[37]  To prevail on a claim of ineffective assistance of counsel, Mr. Levier must therefore demonstrate: (1) that his attorney's representation was deficient because it fell below an objective standard of reasonableness; and (2) that his attorney's deficient performance prejudiced him.[38]  A failure to establish either prong is fatal to the claim.[39]  The parts of the test need not be analyzed in any particular order, and there

---

[35]    *Burdine v. Johnson*, 262 F.3d 336, 344 (5th Cir. 2001).

[36]    *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995); *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976).

[37]    *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003).

[38]    *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  See, also, e.g., *United States v. Franks*, 230 F.3d 811, 813 (5th Cir. 2000); *United States v. Garcia*, 77 F.3d 857, 859 (5th Cir. 1996).

[39]    *United States v. Franks*, 230 F.3d at 813; *Tucker v. Washington*, 115 F.3d 276, 280 (5th Cir. 1997).

is no need to consider the remaining part once an insufficient showing has been made concerning the other.[40]

In analyzing the professional competency part of the test, judicial scrutiny of an attorney's performance must be "highly deferential," and the court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[41] There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[42]

To satisfy the prejudice part of the test, Mr. Levier must demonstrate that his attorney's actions or inactions were "so serious as to render the proceedings unreliable and fundamentally unfair."[43] "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error did not prejudice the defense."[44] Prejudice is demonstrated only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of

---

[40]     *Goodwin v. Johnson*, 132 F.3d 162, 173 at n. 6 (5th Cir. 1998), citing *Strickland v. Washington*, 466 U.S. at 697.

[41]     *Strickland v. Washington*, 466 U.S. at 689.

[42]     *Strickland v. Washington*, 466 U.S. at 689.

[43]     *United States v. Patten*, 40 F.3d 774, 777 (5th Cir. 1994), citing *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

[44]     *Ricalday v. Procunier*, 736 F.2d 203, 208 (5th Cir. 1984).

the proceeding would have been different.  A reasonable probability is a probability

sufficient to undermine confidence in the outcome."[45]  Thus, to establish prejudice

due to his trial counsel's alleged ineffectiveness, Mr. Levier must show a reasonable

probability that he would not have been convicted had his counsel done those things

– or not done those things – that he now complains of.[46]

The issue of ineffective assistance of counsel is a mixed question of law and

fact.[47]  Thus, the question before this court is whether the state courts' denial of relief

was contrary to or an unreasonable application of United States Supreme Court

precedent.

(1)    COUNSEL'S PURSUIT OF A POLITICAL CAREER

The record reflects that Mr. Levier's counsel was serving as a Louisiana state

representative during and after Mr. Levier's trial.  Mr. Levier contends that his

relatives, Ida M. Levier and Herman Collins, encountered difficulty in their attempts

to contact his counsel both before and after trial, and he implicitly attributes this to

his counsel's being a state legislator.  However, Mr. Levier does not contend that his

counsel was ever unresponsive to him.  The record establishes that Mr. Levier's

_____

[45]     *Strickland v. Washington*, 466 U.S. at 694.

[46]     *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

[47]     *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010); *Richards v. Quarterman*, 566
F.3d 553, 561 (5th Cir. 2009).

-19-

counsel requested additional time to prepare Mr. Levier's appeal because he was serving in the state legislature.  But there is no evidence that any requested continuance was denied, and Mr. Levier did appeal his conviction.  Therefore, Mr. Levier has not demonstrated that he was prejudiced in any way by his counsel's lack of responsiveness to his relatives or by delaying the appeal.  Therefore, there is no basis for finding that his counsel was ineffective due to his service in the state legislature.

### (2)   COUNSEL'S FAILURE TO INVESTIGATE AND PRESENT EVIDENCE OF MR. LEVIER'S MEDICAL RECORDS, FAILURE TO BASE A DEFENSE ON MR. LEVIER'S MENTAL DEFECT, AND FAILURE TO ENTER A PLEA OF NOT GUILTY BY REASON OF INSANITY

In evaluating a trial attorney's performance, courts are required to apply a strong presumption that counsel performed adequately and exercised reasonable professional judgment.[48]  "Strategic choices made [by counsel] after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[49]  Furthermore, "a conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel

---

[48]     *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009); *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006).

[49]     *St. Aubin v. Quarterman*, 470 F.3d 1096, 1102 (5th Cir. 2006), quoting *Strickland v. Washington*, 466 U.S. at 690.

unless it is so ill chosen that it permeates the entire trial with obvious unfairness."[50] "Strategic choices made after less than complete investigation are reasonable only to the extent that reasonable professional judgments support the limitations on investigation."[51] "Given the almost infinite variety of possible trial techniques and tactics available to counsel, [the Fifth Circuit] is careful not to second guess legitimate strategic choices."[52]

Mr. Levier complains that his counsel did not properly investigate his mental health records or present them at trial, did not defend against the second-degree murder charge on the basis of his mental deficiencies, and did not enter a plea of not guilty by reason of insanity. But Mr. Levier's counsel testified at the hearing on the motion for postconviction relief and explained that he was aware of Mr. Levier's mental deficiencies, determined that Mr. Levier was able to distinguish right from wrong and assist with his defense, and made a strategic decision not to enter a plea of not guilty by reason of insanity.[53] He articulated two reasons for not making Mr. Levier's mental deficiencies an issue at trial. First, he did not believe that Mr.

---

[50]    *Richards v. Quarterman*, 566 F.3d at 564, quoting *Virgil v. Dretke*, 446 F.3d at 608.

[51]    *Lloyd v. Whitley*, 977 F.2d 149, 158 (5th Cir. 1992), quoting *Strickland v. Washington*, 466 U.S. at 690-91.

[52]    *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993).

[53]    Rec. Doc. 22 at 9-18.

Levier's mental status met either prong of the standard that must be satisfied in order to raise an insanity defense.[54]  Second, he was afraid that asserting such a defense would not be looked upon kindly by the jury.[55]  Counsel confirmed that it was his trial strategy not to put on evidence of Mr. Levier's limited mental capacity[56] because he feared "it would backfire with the jury"[57] and because "his alleged  mental incapacity. . . does not rise to the level of a defense."[58]

Additionally, the evidence put on during the competency hearing to show that Mr. Levier's mental functioning was significantly diminished was not overwhelming. For example, a psychologist who interviewed Mr. Levier on only one occasion testified that he tested at the moderate range of mental retardation,[59] functions in the mild range of mental retardation adaptively,[60] cannot write his own name,[61] and has

---

[54]      Rec. Doc. 22 at 12, 13, 14

[55]      Rec. Doc. 22 at 15-16, 17.

[56]      Rec. Doc. 22 at 17-18.

[57]      Rec. Doc. 22 at 18.

[58]      Rec. Doc. 22 at 18.

[59]      Rec. Doc. 21 at 13.

[60]      Rec. Doc. 21 at 14.

[61]      Rec. Doc. 21 at 15.

never been able to live alone.[62]  In fact, however, he did live on his own[63] and signed his name to numerous documents in the record.[64]  The trial court, "[h]aving witnessed Mr. Levier's behavior during the trial and having reviewed the record and evidence in light of the appropriate consideration for determining competency. . . conclude[d] that Mr. Levier was not incompetent to stand trial."[65]

As noted above, Mr. Levier's counsel could have put on evidence of his mental deficiencies at trial only if a not guilty by reason of insanity plea had been entered. The decision of whether to raise an insanity defense is a matter of trial strategy.[66] Therefore, the state courts were not unreasonable in finding that Mr. Levier's arguments concerning his trial counsel's decisions concerning his alleged mental deficiencies lack merit.

---

[62]    Rec. Doc. 21 at 24.

[63]    Rec. Doc. 21 at 34.

[64]    See, e.g., Rec. Doc. 18 at 146 (advice of rights sheet); Rec. Doc. 18 at 215 (September 21, 2008 letter to the trial court judge); Rec. Doc. 1 at 10 (instant petition); Rec. Doc. 1 at 53 (memorandum in support of instant petition); Rec. Doc. 1-2 at 10 (application for appointment of counsel); Rec. Doc. 1-2 at 11 (memorandum in support of application for postconviction relief); Rec. Doc. 1-2 at 5 (medical information release form)

[65]    Rec. Doc. 28-1 at 173.

[66]    *McInerney v. Puckett*, 919 F.2d 350, 353 (5th Cir. 1990).

Furthermore, an attorney is not required to present a frivolous, baseless,  or meritless defense.[67]  "An attorney's failure to raise a meritless argument. . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."[68]  In this case, Mr. Levier has not presented evidence that he was insane at the time that he committed the offense or at the time of trial; accordingly, it would have been pointless for his counsel to have pursued an insanity defense.  Thus, the state courts were not unreasonable in finding that Mr. Levier's counsel was not ineffective for failing to assert a not guilty by reason of insanity defense.

### (3)   COUNSEL'S FAILURE TO OBJECT TO THE VICTIM IMPACT STATEMENT

Mr. Levier argues that his trial counsel was ineffective because he failed to object to the victim impact evidence that was presented at sentencing.  As noted above, however, this evidence could not influence his sentence because only a single sentence was statutorily permitted.  Therefore, an objection to its introduction would

---

[67]     See, e.g., *Neal v. Cain*, 141 F.3d 207, 214-15 (5th Cir. 1998) (counsel is not required to assert meritless arguments); *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995) (counsel is not required to file meritless motions); *Smith v. Puckett*, 907 F.2d 581, 585, n. 6 (5th Cir.1990) (counsel is not required to raise a legally meritless claim); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ( counsel is not required to make futile motions or objections); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) (per curiam) (same).

[68]     *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

-24-

have been futile.  Counsel is not ineffective for failing to make frivolous, futile, or meritless objections.  In fact, the "[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite."[69]  Therefore, it was not unreasonable for the state courts to find that Mr. Levier's counsel was not ineffective for failing to object to the victim impact statement that was read at the sentencing hearing.

### (4)   COUNSEL'S FAILURE TO PURSUE A MANSLAUGHTER DEFENSE

As addressed above in greater detail, the strategic choices made by counsel are largely impervious to challenge.  Tactical decisions that are supported by the circumstances are objectively reasonable and do not constitute unconstitutionally deficient performance.[70]  Furthermore, federal *habeas* courts presume that trial strategy is objectively reasonable unless clearly proven otherwise, and the burden is on petitioner to demonstrate that his counsel's strategy was constitutionally deficient.[71]

Mr. Levier was charged with the crime of second-degree murder.  Under Louisiana law, the responsive verdicts for this crime are:  guilty, guilty of

---

[69]   *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).

[70]   *Marshall v. Cain*, No. 04-219, 2006 WL 2414073, at *13 (E.D. La. Aug. 18, 2006); *Mann v. Scott*, 41 F.3d 968, 983–84 (5th Cir. 1994).

[71]   *Strickland v. Washington*, 466 U.S. at 689.

manslaughter, guilty of negligent homicide, and not guilty.[72]  Therefore, the judge instructed the jury with regard to the definitions of second-degree murder, manslaughter, and negligent homicide.[73]  Mr. Levier claimed that he acted in self-defense, and the trial court judge instructed the jury with regard to self-defense.[74]  The jury was then presented with the option of finding Mr. Levier guilty or not guilty of either second-degree murder, manslaughter, or negligent homicide.[75]  It is clear from the opening and closing statements made by Mr. Levier's counsel as well as from a review of the trial record as a whole that Mr. Levier's attorney did not attempt to persuade the jury to return a manslaughter verdict; instead, he attempted to show that Mr. Levier acted in self-defense and was, therefore, entitled to a not guilty verdict. "A defensive theory and the manner in which it is presented are matters of trial strategy."[76]

In light of testimony that the victim was known to carry a knife, that Mr. Levier had witnessed the victim threaten someone with the knife on two prior occasions, that

---

[72]     Louisiana Code of Criminal Procedure Article 814(A)(3).

[73]     Rec. Doc. 20 at 178-181.

[74]     Rec. Doc. 20 at 179-180.

[75]     Rec. Doc. 18 at 179; Rec. Doc. 20 at 181, 182.

[76]     *Green v. Cockrell*, No. 4:02-CV-059-A, 2002 WL 31045976, at *4 (N.D. Tex., Sept. 9, 2002).

Mr. Levier testified that he observed the victim reaching into his pocket, that a knife was found in the victim's car after the incident, and that another knife was found in the victim's pocket during the autopsy, the undersigned cannot say that the trial court was unreasonable in finding that counsel's decision to pursue self-defense but not manslaughter was a sound trial strategy.  To the contrary, deciding to pursue self-defense rather than manslaughter was the essence of trial strategy,[77] which this Court should not second guess.  The fact that the defense was not successful does not mean that counsel was deficient.[78]  Mr. Levier has not demonstrated that his trial counsel was constitutionally ineffective or that the state courts acted unreasonably in failing to find that his counsel was ineffective.  Accordingly, his argument lacks merit.

## CONCLUSION AND RECOMMENDATIONS

For the reasons stated above, the undersigned finds that each of Mr. Levier's claims lacks merit.  Accordingly,

---

[77]     See, e.g., *Green v. Cockrell*, 2002 WL 31045976, at *4 (trial counsel's decision to pursue manslaughter defense over possibly inconsistent self defense theory was a matter of trial strategy); *Craft v. King*, No. 3:08CV490TSL-FKB, 2011 WL 2670732, at *9 (S.D. Miss., June 3, 2011), report and recommendation adopted, No. 3:08CV490TSL-FKB, 2011 WL 2670574 (S.D. Miss., July 7, 2011) ("the state court could have reasonably concluded that trial counsel's decision to pursue a heat of passion defense and not a self defense theory was a matter of trial strategy, on which counsel should not be second-guessed.")

[78]     *Martinez v. Dretke*, 99 Fed. App'x 538, 543 (5th Cir. 2004) ("Again, an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel.").

**IT IS RECOMMENDED** that Mr. Levier's petition be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served, with a copy of any objections or response being provided to the District Judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be

taken to the court of appeals.  Within fourteen days from service of this Report and

Recommendation, the parties may file a memorandum setting forth arguments on

whether a certificate of appealability should issue.  See 28 U.S.C. § 2253(c)(2).  A

courtesy copy of the memorandum shall be provided to the District Judge at the time

of filing.

Signed at Lafayette, Louisiana, on October 31, 2014.

_____

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

COPY SENT:

DATE:   10/31/2014
BY:            EFA
TO:            RTH
                   pj

-29-